UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,

       -against-                                    13 CR 419 (DLI)

LEON CAMPBELL AND
RONALD WILLIAMS,
                Defendants.

-----------------------------------------------------------x

MEMORANDUM OF LAW IN RESPONSE TO THE GOVERNMENT'S MOTION FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY AND ALSO IN OPPOSITION TO THE GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF OTHER ACTS

                                                  Law Office of Ilissa Brownstein, P.C.
                                                  65 Broadway, Suites 813 & 814
                                                  New York, New York 10006
                                                  (212) 691-3333
                                                  Attorney for Defendant Ronald Williams

Table of Contents

Table of Authorities ................................................................................................................... ii

Preliminary Statement.................................................................................................................1

Argument ....................................................................................................................................1

    Point I

    AN ANONYMOUS JURY IS NEITHER NECESSARY NOR APPROPRIATE
    FOR MR. WILLIAMS'S TRIAL ......................................................................................1

        A.       Introduction..............................................................................................1

        B.       The Law ...................................................................................................1

        C.       This case does not present the criteria that justifies
                    empanelment of an anonymous and semi-sequestered jury....................4

    Point II

    THE GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF OTHER ACTS
    SHOULD BE DENIED: ITS INTRODUCTION WOULD RELATE TO ISSUES
    THAT ARE NOT YET IN DISPUTE AND WOULD IMPROPERLY
    HIGHLIGHT DEFENDANT'S ALLEGED PROPENSITY TO COMMIT THE
    CRIMES CHARGED .........................................................................................................8

Conclusion ................................................................................................................................12

Table of Authorities

FEDERAL CASES

    ABC, Inc. v. Stewart,
    360 F.3d 90 (2d Cir. 2004)....................................................................................................7

    Huddleston v. United States,
    485 U.S. 681 (1988)..............................................................................................................8

    Old Chief v. United States,
    519 U.S. 172 (1997)............................................................................................................11

    United States v. Amuso,
    21 F.3d 1251 (2d Cir. 1994)............................................................................................2, 3

    United States v. Bellomo,
    954 F.Supp. 630 (SDNY 1997)............................................................................................3

    United States v. Colon,
    880 F.2d 650 (2d Cir. 1989)..........................................................................................8, 10

    United States v. Coonan,
    664 F.Supp. 861 (SDNY 1987)............................................................................................3

    United States v. Downing,
    297 F.3d 52 (2d Cir. 2002)..................................................................................................8

    United States v. Inserra,
    34 F.3d 83 (2d Cir. 1994)....................................................................................................8

    United States v. Melendez,
    743 F.Supp. 134 (EDNY 1990) .........................................................................................3

    United States v. Millan-Colon,
    834 F.Supp. 78 (SDNY 1993).............................................................................................3

    United States v. Pitre,
    960 F.2d 1112 (2d Cir. 1992)....................................................................................8, 9, 10

    United States v. Ross,
    33 F.3d 1507 (11th Cir. 1994) ............................................................................................3

    United States v. Tarricone,
    996 F.2d 1414 (2d Cir. 1993)......................................................................................10, 11

United States v. Thai,
29 F.3d 785 (2d Cir. 1994)..........................................................................................2, 4

United States v. Thomas,
757 F.2d 1359 (2d Cir. 1985)......................................................................................2, 3

United States v. Tutino,
883 F.2d 1125 (2d Cir. 1989).........................................................................................2

United States v. Vario,
943 F.2d 236 (2d Cir. 1991)...........................................................................................1

United States v. Wiley,
846 F.2d 150 (2d Cir. 1988).........................................................................................12

United States v. Wong,
40 F.3d 1347 (2d Cir. 1994)...........................................................................................3

STATUTES AND OTHER AUTHORITIES

FedR.Evid. 403 ..................................................................................................................8

Fed.R.Evid. 404 ....................................................................................................8, 11, 12

BOP Program Statement 5270.10 § 541.22 .......................................................................5

Weinstein's Federal Evidence § 404.21(3)(b) .................................................................11

Preliminary Statement

Defendant Ronald Williams, by and through counsel, submits the instant memorandum of law in response to the Government's motion for an anonymous and partially sequestered jury as well as in opposition to the Government's motion to admit evidence of other acts. For the reasons that follow, we respectfully submit that the Government's motions should be denied.

Argument

Point I

AN ANONYMOUS JURY IS NEITHER NECESSARY NOR APPROPRIATE FOR MR. WILLIAMS'S TRIAL

A.   Introduction

As set forth below, empaneling an anonymous jury in this case would unfairly burden the presumption of innocence and should be rejected in favor of less extreme measures to protect the privacy of the members of the jury. An anonymous jury would poison the atmosphere of the case and serve to bolster the Government's proof by creating the impression that the defendant on trial is guilty and dangerous.

Particularly in a case in which the Government has charged the defendant with acts of violence, including, specifically acts related to interference with the judicial process, juror anonymity sends the message to each juror that he or she needs to be protected from the defendant on trial. From there, members of the jury could rationally infer that the defendant is both dangerous and guilty. Accordingly, granting the Government's application would deny the defendant the right to a fair trial guaranteed by the United States Constitution.

B.   The Law

The empaneling of an anonymous jury is an unusual and drastic measure that is justified only when the Government establishes that it is "genuinely called for." United States v. Vario,

943 F.2d 236, 239 (2d Cir. 1991); United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994). The Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury selection is permissible only under circumstances where there is a convincing showing by the Government of a "strong reason to believe the jury needs protection." United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985). Without this predicate showing, an anonymous jury may not be empaneled.

In assessing whether a jury truly "needs protection," and that, therefore, an anonymous jury is "genuinely called for," the Court has emphasized that, "[A]n obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in our decisions regarding anonymous juries." Vario, 943 F.2d at 240; see also United States v. Tutino, 883 F.2d 1125, 1132-33 (2d Cir. 1989). Here, while a conspiracy to tamper with witnesses has been charged, the conspiracy never came to fruition and, regardless, was not targeting jurors or potential jurors, and as such the allegation is too attenuated in that it relates solely to a witness but does not extend to the jury.

The reason a decision to impanel an anonymous jury may be made only after a strong showing of its necessity is that the practice places a burden on two important interests: the presumption of innocence and the defendant's interest in conducting a meaningful voir dire. As stated in United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994), in considering a motion for an anonymous jury, a court "must balance the defendant's interest in conducting a meaningful voir dire and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict."

Courts do not reach the balancing test, however, without a credible and convincing

2

predicate showing from the Government that there is, in fact, "strong reason to believe the jury needs protection," defined as a finding that there is "a serious threat to jury safety." Thomas, 757 F.2d at 1364-65; Amuso, 21 F.3d at 1264 (quoting Thomas with approval); see also United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence.") (citing Thomas).

Here, the Government has alleged sufficient facts which, if true, establish the need to take added security measures with regard to its witnesses, but even the Government's worst accusations are insufficient to establish that the defendant has ever attempted to tamper with jurors, or that he has ever intended to.

In United States v. Ross, 33 F.3d 1507 (11th Cir. 1994), the Court summarized the risks of an anonymous jury as follows:

> Unquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances. An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.

Because of the importance of the interests that are burdened by the practice, empaneling an anonymous jury "is a measure that should be taken only with care." United States v. Bellomo, 954 F.Supp. 630, 654 (SDNY 1997); see United States v. Millan-Colon, 834 F.Supp. 78 (SDNY 1993) (denying application for anonymous jury); United States v. Melendez, 743 F.Supp. 134, 135 (EDNY 1990) (denying "drastic remedy of an anonymous jury"); United States v. Coonan, 664 F.Supp. 861, 862 (SDNY 1987) (denying anonymous jury in the absence of evidence that the defendants were likely to interfere with the judicial process, notwithstanding the fact they were charged with "predicate acts including murder, attempted murder, kidnapping,

loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies").

As the above summary suggests, even in the proper case, empanelling an anonymous jury burdens the presumption of innocence. The cases that have upheld the practice only have done so based upon particular facts that justified the burden placed on the rights of the defendant. Those facts, however, are not present in this case.

      C.      <u>This case does not present the criteria that justifies empanelment of an anonymous and partially sequestered jury</u>

The Government correctly identifies the five factors relevant to determining the propriety of empanelling an anonymous jury: "(1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the jury, either by himself or through a criminal organization of which he is a member; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that might impair their ability to be fair." <u>Thai</u>, 29 F.3d at 801. However, none of these factors suggests that an anonymous and partially sequestered jury is necessary or appropriate for Mr. Williams's trial.

To be sure, Mr. Williams is charged with serious crimes. He is alleged to have participated in a conspiracy to murder a witness and to have conspired to distribute marijuana and commit Hobbs Act robbery. He is also alleged to have threatened to tampered with witnesses in relation to a prior trial. We cannot dispute that the allegations here are extremely serious. However, it cannot be ignored that the jury has never been a target of the defendant, and has never even been alleged to have been a target (neither in this case, nor in any prior case).

4

Further, even with respect to the allegations of witness tampering, the Government alleges that his co-defendant, Mr. Campbell, hired Mr. Williams to eliminate the witness, not the other way around. Even in relation to the allegations of witness tampering in Mr. Williams's prior trial Mr. Williams has never been alleged to have attempted to threaten or intimidate a juror or potential juror. As such, we respectfully submit that the seriousness of the present charges do not support the highly prejudicial protective measures sought by the Government.

While the Government's allegations are cause for concern, they are, nevertheless, irrelevant to the question of whether the jury faces any actual or imagined danger. Standing alone, the allegations presented by the Government should not form the basis for such drastic relief. Instead, the Court should compel the Government to make a more relevant proffer before granting the relief requested, that is to say, a proffer establishing that the jury has specific cause for concern.

While the Government lists various cases in which there were allegations of obstruction of justice, there is no allegation the defendant ever engaged in jury tampering. We respectfully submit that the Government must proffer a sufficient basis for which this Court may make a determination that there is some direct relevance with regard to Mr. Williams and the question of juror fears or safety. The Government's proffer is thus far lacking.

As stated above, a review of the evidence establishes that Mr. Williams had no involvement in jury tampering, and, notably, if the Government truly believed that Mr. Williams posed such a risk then he would not remain in general population, as he continues to remain. Instead, he would be already be detained in administrative detention in the MDC Special Housing Unit ("SHU") during the pendency of these proceedings. See BOP Program Statement 5270.10 § 541.22 ("Administrative detention status is an administrative status which removes

5

you from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public."). The fact that Williams in not being detained in the MDC SHU, and is instead permitted to freely communicate with other inmates in general population, should serve as significant proof that the Government's purported security concerns are not nearly as severe as claimed. Accordingly, if the Government is not so concerned for its witnesses that administrative detention is required, then there is no reason to conclude potential jurors will possess any legitimate security concerns.

With respect to the media, we do acknowledge that there is always a chance that there could be some minimal media attention that could cause pressure upon the jury or impair their ability to be fair. We do not, however, believe that granting the jury anonymity will effectively extinguish the potential prejudice resulting from media attention, particularly in this case where the has been no known media attention so far. As such, there is no reason to believe the jury will even be aware of any potential reporting, let alone effected by it. To the extent that potential jurors might become aware of media coverage, those few jurors could be carefully questioned and, if necessary, removed for cause.

On the other hand, it is the specter of an anonymous jury itself that most threatens juror impartiality in Mr. Williams's case, since jury anonymity in and of itself carries the potential to taint the jurors' opinions about the defendant. We respectfully submit that granting anonymity will only serve to heighten any real or perceived dangers that the jury might feel as a result of any media attention that this case will garner. Jurors will immediately be placed in a position where they are asking themselves whether the media attention and the reason for anonymity are more than merely intertwined, but rather both due to the absolute validity of the Government's allegations? If the media attention expands as the case proceeds to trial, the danger of the

media's biasing effect would be significantly diminished if the Government's motion is denied and instead this Court simply includes questions during voir dire specifically designed to ferret out any jurors who fear for their safety.

Moreover, there are less burdensome means available to protect the jury from being subjected to unwanted media attention. To the extent that this Court feels it is necessary to keep the names of jurors from the public record, Mr. Williams does not object to a procedure that allows the parties access to the names and other information concerning the jurors while withholding that information from the public record. Similarly, we would also consent to withholding juror's names and identifying information from the defendant himself, so long as defense counsel is not similarly disadvantaged.

In the prosecution of Martha Stewart, a true celebrity placed on trial in a case that was significantly more publicized, the trial judge, in an effort to protect potential jurors' privacy, closed the voir dire to the media. In reversing that ruling, the Second Circuit noted that the concerns for juror privacy could have been accomplished by "simply concealing the identities of the prospective jurors" from the media. See ABC, Inc. v. Stewart, 360 F.3d 90, 105 (2d Cir. 2004). The Second Circuit also noted that the trial judge in that case had entered an order "prohibiting the media from communicating with jurors or prospective jurors or with their family members until such time as that juror's or potential juror's service was completed." ABC, Inc., 360 F.3d at 94. Williams does not object to a similar order being entered in this case as expanded to include a prohibition from any person having contact with jurors. Nor do we object to the jury being informed of such a court order with instructions from the Court to report any violation of that order.

Accordingly, for the reasons set forth above, the Government's motion for an anonymous

7

and partially sequestered jury should be denied.

## Point II

**THE GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF OTHER ACTS SHOULD BE DENIED: ITS INTRODUCTION WOULD RELATE TO ISSUES THAT ARE NOT YET IN DISPUTE AND WOULD IMPROPERLY HIGHLIGHT DEFENDANT'S ALLEGED PROPENSITY TO COMMIT THE CRIMES CHARGED**

The Government seeks to introduce, in its case-in-chief, evidence, in the form of witness testimony, photographs, physical evidence, post-arrest statements, and recorded conversations, that contain a broad cross-section of information all intending to show his guilt of the present charges based upon Mr. Williams prior actions and statements; in other words, based upon Mr. Williams alleged propensity to commit these offenses. For the reasons that follow, we respectfully submit that the Government's motion should be denied either in its entirety or at least in some limited form.

It is well established that under Fed.R.Evid. 404(b) evidence of prior acts are inadmissible unless they are: (1) offered for a proper purpose; (2) relevant; (3) "substantially more probative than prejudicial;" and (4) if requested, a limiting instruction is given to the jury. United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002), citing, Huddleston v. United States, 485 U.S. 681, 691-92 (1988). Regarding "proper purpose," the Government concedes that although the Second Circuit follows the "inclusionary rule" it does so subject to Rule 403 balancing, see Gov't Mot. At 30, citing, inter alia, United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994), the Government fails to mention that Rule 404(b) evidence generally may not be introduced until the defendant first opens the door to its introduction, see United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992); United States v. Colon, 880 F.2d 650, 660-61 (2d Cir. 1989).

Williams has been charged with, inter alia, his involvement in a marijuana conspiracy, Hobbs Act Robbery and murder conspiracies, and related firearms charges. However, Williams is not charged with being involved in a racketeering enterprise and the proffered evidence the Government seeks to introduce would at most evince that Williams had committed the prior acts in the past. With respect to their relation to his present charges, those prior acts are unnecessary to establish the present charges and do little more than present the jury with a highly prejudicial presentation of his propensities.

Here, specifically, with the possible exception of the Hobbs Act and murder conspiracy charges (the defense to which will turn on this court's rulings related to co-defendant Leon Campbell's competency at the time of the offense), the undersigned expects to argue at trial a straightforward defense that Mr. Williams did not commit the charged offenses. With respect to the firearms charges, for example, presenting the fact that all DNA tests have excluded him. Such a straightforward, "he didn't do it" defense, is a distinction that is highly pertinent here.

"[A]s a general rule, the offer of evidence to prove the defendant's intent or knowledge should await the conclusion of the defendant's case." Pitre, 960 F.2d at 1120. It is only when it becomes "apparent that intent will be in dispute [that] evidence of prior or similar acts may be introduced during the government's case-in-chief." Id. Here, Defendant respectfully submits that prior to Defendant's opening statement it is premature to assume whether intent will or will not be disputed at trial. Indeed, it is entirely possible that such determination will not even be made prior to the conclusion of the Government's case-in-chief.

In many instances the theory of the defense changes by the dictates of the case. Government witnesses often testify better or worse than expected, and as such, a complete assessment of the theory of the defense cannot be made pretrial. Here, we have a perfect

9

example of that with respect to the Hobbs Act and murder conspiracy charges. The Government is required to establish that Mr. Williams entered into an agreement with at least one legally culpable other to commit the crimes subject to the conspiracies. If Mr. Campbell is found incompetent at the time of the alleged conspiracies, then the conspiracies cannot be said to exist unless or until the Government presents proof that Mr. Williams entered into an agreement with someone other than Mr. Campbell. On the other hand, if Mr. Campbell is found competent, then Mr. Williams's defense will be required to evolve.

In Pitre the Court did conclude that "where it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief." Pitre, 960 F.2d at 1120. However, although this may sometimes be the case, the Second Circuit has also concluded that generally the best course of action is to preclude the introduction of other act evidence until the defendant has opened the door to its introduction through his opening statement or a witness' testimony. See Colon, 880 F.2d at 660-61.

In Colon, the Court explained that although it might be frustrating to the district court as well as to the prosecution if the defendant has presented conflicting defense theories pretrial, so long as at least one of those theories would remove intent from dispute – such as denying participation in the charged conduct – then "the proper course was to await [the defendant's] decision before permitting the similar acts evidence to enter the case." Colon, 880 F.2d at 660-61. Indeed, under these circumstances, "admission of the evidence should have awaited the conclusion of [the defendant's] case." Id. at 660.

Further, in United States v. Tarricone, 996 F.2d 1414 (2d Cir. 1993), decided just one year after Pitre, the Second Circuit explained that under certain conditions intent may remain technically at issue while at the same time no longer acting as a permissible basis for the

10

inclusion of other act evidence.

> In some circumstances the very nature of a defense put forward by the defendant may itself remove an issue from a case. Where a defendant claims that he did not commit the charged acts, as opposed to claiming that he acted innocently or mistakenly, "[k]nowledge and intent, while technically at issue, [are] not really in dispute." United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. 1978) (citation omitted).

Tarricone, 996 F.2d at 1421.

Here, the principal issue to be resolved at trial will likely be whether Mr. Williams participated in the alleged conspiracies, and whether he possessed the firearms seized by law enforcement. A defense to these charges may be made without challenging Mr. Williams's prior knowledge of the drug trade, prior possession and use of a firearm, and prior threats and acts of violence. Until the Government presents evidence that requires the defense to think otherwise, Mr. Williams expects to be able to conduct his defense without placing intent or knowledge in dispute.[1]

Even if this Court determines that the proffered evidence is relevant to a showing of intent, knowledge, or to complete the background of the offense, illegal relationship and mutual trust, the evidence should nonetheless be excluded under Rule 403, since the resulting prejudice would far outweigh its probative effect. "Unfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence…. Rather, it refers to the tendency of certain evidence to provoke an emotional response in the jury or otherwise to suggest a decision on an improper basis." Weinstein's Federal Evidence § 404.21(3)(b) at 404-68 (emphasis in original), citing, Old Chief v. United States, 519 U.S. 172, 180 (1997). Although evidence could be probative of knowledge or intent, it could at the same

---

1   Mr. Williams reserves the right to change the theory of the defense at any time, at which point Mr. Williams would consent to a reevaluation of whether the door had been opened to the introduction of Rule 404(b) evidence.

11

time become "too prejudicial" if it would tend to make the jury believe that the defendant had a propensity to commit the charged crimes. United States v. Wiley, 846 F.2d 150, 156 (2d Cir. 1988).

The proffered evidence here evinces that Mr. Williams had previously sold marijuana, in some instances with the same individuals alleged to have participated in the present offenses, that he had committed previous acts of violence, and made previous threats of violence. None of this information is necessary to establish Mr. Williams present offenses, particularly in light of the voluminous direct evidence (not listed in the Government's motion) that the Government intends to introduce at trial. As such, the additional other act evidence submit to the Government's motion, regardless the proffered purpose, will only truly tend to show his predisposition to commit the charged offenses, not his actual knowledge or intent to commit said offenses.

Indeed, it seems quite obvious that evidence of prior uncharged conduct would be unnecessary to establish Mr. Williams's guilt of the present offenses and is only needed to enhance the Government's attack on his character, which by itself is, of course, impermissible under Rule 404(b). Surely, the Government can accomplish this goal without the introduction of highly prejudicial statements and testimony.

## Conclusion

Wherefore, for the above-stated reasons, Defendant Ronald Williams, by and through counsel, respectfully submits that the Government's motion for an anonymous jury should be rejected, and that the defendant's prior bad acts should be precluded at trial.

Dated:   New York, New York
         November 6, 2015

                                            Respectfully submitted,

                                        /s/_____

                                        Ilissa Brownstein
                                        Attorney for Defendant Ronald Williams